IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PABLO PAZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-2804 |
| | § | |
| LIFE TIME FITNESS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This is a personal injury suit brought by parents individually and on behalf of their minor daughter. The child was injured in June 2008 while attending a summer day camp at a fitness center in Sugarland, Texas. The defendants have moved for summary judgment on the basis of their affirmative defense of release. (Docket Entry No. 22). The defense is based on a "participation agreement" the mother signed when she enrolled the child in the program. The agreement includes one section labeled "ASSUMPTION OF RISK" and another labeled "RELEASE OF LIABILITY." The defendants assert that the agreement is an enforceable preinjury waiver and move to dismiss the plaintiffs' claims for premises liability, negligence, and gross negligence. The plaintiffs respond that under Texas law, a parent's signature on a preinjury release is not enforceable as a waiver of the minor's rights. Based on the pleadings, the motion and response, the parties' submissions, and the applicable law, this court denies the summary judgment motion. The reasons are explained below.

**I.    The Participation Agreement**

The Participation Agreement contained two sections with titles in bolded all capital letters labeled, "**ASSUMPTION OF RISK**" and "**RELEASE OF LIABILITY**," which read in pertinent part:

**ASSUMPTION OF RISK**

The undersigned understands that there is an inherent risk of injury, whether caused by Participant or someone else, in the use of or presence at a Life Time Fitness center, the use of equipment and services at Life Time Fitness center, and participation in Life Time Fitness' programs. This includes but is not limited to, indoor and outdoor pool areas with water slides, a climbing wall area, ball and racquet courts, cardiovascular, and resistance training equipment, personal training and nutrition classes and services, member programs, a child center, and spa and café products and services. The risk includes, but is not limited to:

1) Injuries arising from the use of any of Life Time Fitness' centers or equipment, including any accidental or "slip and fall" injuries;

2) Injuries arising from participation in supervised or unsupervised activities and programs within a Life Time Fitness center or outside a Life Time Fitness center, to the extent sponsored or endorsed by Life Time Fitness;

3) Injuries or medical disorders, including, but not limited, to heart attacks, strokes, heart stress, sprains, broken bones and torn muscles or ligaments, resulting from my use of or presence at a Life Time Fitness center, Participant's use of equipment or services at a Life Time Fitness center, or my participation in Life Time Fitness' programs; and

4) Injuries resulting from the actions taken or decisions made regarding medical survival procedures.

The undersigned understands and voluntarily accepts this risk on behalf of Participant. The undersigned agrees to specifically assume all risk of loss, theft or damage of personal property for Participant while he or she is using or present at any Life Time Fitness center, using any lockers, equipment or services at any Life Time Fitness center or participating in Life Time Fitness' programs whether such programs take place inside of or outside of a Life Time Fitness center.

**RELEASE OF LIABILITY**

> The undersigned waives any and all actions that may arise against Life Time Fitness as well as its owners, directors, or volunteers, as a result of any such injury, loss, theft, or damage to any such person, including and without limitation, personal bodily or internal injury, economic loss or any damage to Participant including but not limited to the injuries described above, resulting from the negligence of Life Time Fitness or anyone else using a Life Time Fitness Center. The undersigned agrees to defend, indemnify, and hold Life Time Fitness harmless against any claims arising out of the negligence or willful acts or omissions of me or Participant.

The agreement also contained a clause in bold typeface above the signature line stating in part:

> **I hereby certify that I have read and understand this entire Agreement and agree to and accept the terms and conditions of this entire application . . . .**

## II. The Applicable Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one

party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Texas Law on Preinjury Releases

Texas imposes fair notice requirements on preinjury releases. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508–09 (Tex. 1993). A release that fails to satisfy the state's fair notice requirements is unenforceable as a matter of law. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). Fair notice requires that (1) a party seeking to enforce a release provision comply with the express negligence doctrine and (2) that the provision be conspicuous. *Id.* The express negligence doctrine provides a party seeking to release potential claims against another party for the other party's negligence must express that intent in unambiguous terms within the four corners of the agreement. *Reyes*, 134 S.W.3d at 192. The conspicuousness requirement provides that the releasing language must be conspicuously written so that a reasonable person

against whom it is to operate should notice it. *Id.* at 192; *Dresser,* 853 S.W.2d at 508. Texas courts have consistently held that whether an agreement provides fair notice of a release provision is immaterial if the releaser had actual knowledge of the existence of the release provision. *Dresser*, 853 S.W.2d at 508 n.2; *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990) (a party who, before entering into contract, has actual knowledge of its terms cannot escape enforcement of those terms on the ground that the terms are inconspicuous); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 126 (Tex.App.—Houston [14th Dist.] 2000, pet. denied) (holding an indemnity agreement read by indemnitor conspicuous and rejecting indemnitor's argument that the indemnitee must show that the indemnitor actually noticed the indemnity language when reading the agreement).

The plaintiffs rely on an additional aspect of the law governing preinjury releases. Texas and other courts have held that when a parent signs a document that releases a defendant of any liability for injuries suffered by a minor, that release is unenforceable on the basis of public policy.

The leading case in Texas appears to be *Munoz v. II Jaz Inc*., 863 S.W.2d 207 (Tex. App. — Houston [14th Dist.] 1993, no writ). In that case, the parents sued an amusement park for damages resulting from personal injuries their daughter incurred on a ride. The trial court granted summary judgment based on a "Waiver of Liability" form ("waiver") signed by the child's older sister who accompanied her to the park. The appellate court reversed, holding that § 12.04(7) of the Texas Family Code, (the predecessor to § 151.001(a)(7)), which empowers a parent to make legal decisions concerning their child, does not give parents the power to waive a child's cause of action for personal injuries. The court stated that it based its decision "on what our supreme court has described as a 'strong, long-standing policy of this state to protect the interests of its children.'" *Id*. at 210 (quoting *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) (holding that parents could

5

not agree to reduce the amount of child support because it is a benefit of the child, not the custodial parent, based on a public policy to protect children)).

Other states and federal courts have also addressed the propriety of a parent or guardian's execution of a preinjury release on behalf of a minor child. Most have held that preinjury releases executed by parents on behalf of minor children are unenforceable for participation in commercial activities. *See, e.g.*, *Johnson v. New River Scenic Whitewater Tours, Inc.*, 313 F. Supp. 2d 621, 629–32 (S.D. W.Va. 2004) (finding that a parent could not waive liability on behalf of a minor child and also could not indemnify a third party against the parent's minor child for liability for conduct that violated a safety statute such as the Whitewater Responsibility Act); *In re Complaint of Royal Carribean Cruises Ltd.*, 459 F. Supp. 2d 1275, 1279–81 (S.D. Fla. 2006) (under Florida law, parent's preinjury release of liability on behalf of minor child was unenforceable to exonerate the commercial lessor of personal watercraft from liability for injuries sustained by child in accident that occurred while the minor was a passenger on watercraft operated by the parent/lessee); *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 146–47 199 Ill. Dec. 572, 634 N.E.2d 411 (1994) (finding a parental preinjury waiver unenforceable in a case involving a minor child injured after falling off a horse at a horseback riding school); *Doyle v. Bowdoin Coll.*, 403 A.2d 1206, 1208 n.3 (Me. 1979) (stating in dicta that a parent cannot release a child's cause of action); *Smith v. YMCA of Benton Harbor/St. Joseph*, 216 Mich. App. 552, 550 N.W.2d 262, 263 (1996) ("It is well settled in Michigan that, as a general rule, a parent has no authority, merely by virtue of being a parent, to waive, release, or compromise claims by or against the parent's child."); *Hojnowski v. Vans Skate Park*, 187 N.J. 323, 901 A.2d 381, 383 (2006) (finding in a case involving a child injured while skateboarding at a skate park facility, "a parent may not bind a minor child to a pre-injury release of a minor's prospective tort claims resulting from the minor's use of a commercial recreational

facility"); *Childress v. Madison County*, 777 S.W.2d 1, 6–7 (Tenn. Ct. App.1989) (extending the law that a parent could not execute a preinjury release on behalf of a minor child to a mentally handicapped 20-year-old student who was injured while training for the Special Olympics at a YMCA swimming pool); *Hawkins v. Peart*, 37 P.3d 1062, 1066 (Utah 2001) (concluding in a case involving a child injured by falling off a horse provided by a commercial business that "a parent does not have the authority to release a child's claims before an injury"); *Scott v. Pac. W. Mountain Resort*, 119 Wash. 2d 484, 492–93, 834 P.2d 6 (1992) (holding that the enforcement of an exculpatory agreement signed by a parent on behalf of a minor child participating in a ski school is contrary to public policy).

There are cases enforcing preinjury releases executed by parents on behalf of minor children. Most of these cases involve a minor's participation in school-run or community-sponsored activities. *See, e.g., Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 1564–65, 274 Cal. Rptr. 647 (Cal. Ct. App. 1990) (finding the preinjury release executed by a father on behalf of his minor child enforceable against any claims resulting from the child's participation in a school-sponsored event); *Sharon v. City of Newton*, 437 Mass. 99, 112, 769 N.E.2d 738 (2002) (holding that a parent has the authority to bind a minor child to a waiver of liability as a condition of a child's participation in public school extracurricular sports activities); *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 696 N.E.2d 201, 205 (1998) (concluding that a parent may bind a minor child to a release of volunteers and sponsors of a nonprofit sports activity from liability for negligence because the threat of liability would strongly deter "many individuals from volunteering for nonprofit organizations"). As the Ohio Supreme Court explained in *Zivich,* in community and volunteer-run activities, the providers cannot afford to carry liability insurance because "volunteers offer their

services without receiving any financial return." 696 N.E.2d at 205.

### III.     Analysis

The parties have not cited a Texas Supreme Court case addressing the enforceability of a parent's preinjury release of liability against a minor child. The guidance provided by the Texas appellate court case law and the underlying statutes provides a reliable basis for making an *Erie* prediction about how the highest Texas state court would rule if confronted with the question. "When making an *Erie*-guess in the absence of explicit guidance from the state courts, [this court] must attempt to predict state law, not to create or modify it." *Assoc. Inter. Ins. Co. v. Blythe*, 286 F.3d 780, 783 (5th Cir. 2002) (citation omitted).

Based on the case law in Texas and in other jurisdictions, this court holds that the preinjury release executed by the minor's mother in this case is not enforceable to release the defendants from all liability for the minor's injuries. The record does not suggest that the defendants were operating a nonprofit community or school program. Under the majority approach, the release of a commercial enterprise from liability for the child's injuries is not enforceable.

The motion for summary judgment is denied.

SIGNED on December 16, 2010, at Houston, Texas.

                                              Lee H. Rosenthal
                                              United States District Judge